## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

**JOSHUA SMITH**, individually and on behalf of other similarly situated individuals,

      Plaintiff,

v.

**INTERINSURANCE EXCHANGE OF THE AUTOMOBILE CLUB, aka AAA**,

      Defendant.

No. _____

Judge _____

CASE BELOW:
Second Judicial District Court
County of Bernalillo
New Mexico
Case No. D-202-CV-2022-02461

## NOTICE OF REMOVAL

Defendant Interinsurance Exchange of the Automobile Club ("the Exchange") respectfully removes to this Court the above-captioned matter from the Second Judicial District Court, County of Bernalillo, New Mexico. Removal is proper under the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d), 28 U.S.C. § 1441(a) and (b), 28 U.S.C. § 1446, and 28 U.S.C. § 1453, because this is a putative class action with more than 100 putative class members that seeks to recover more than $5 million. In support of this Notice of Removal, the Exchange states as follows.

### I.    NATURE OF THE CASE

1.    Plaintiff Joshua Smith filed this lawsuit against the Exchange on May 4, 2022, in the New Mexico Second Judicial District Court, County of Bernalillo, Case No. D-202-CV-2022-02461, entitled *Joshua Smith, individually and on behalf of others similarly situated v. Interinsurance Exchange of the Automobile Club, aka AAA*. *See* Exhibit A (service papers and Complaint).

2.    The Complaint was delivered to the New Mexico Department of Insurance on May

6, 2022, and then served on the Exchange's agent for service of process on May 13, 2022.  Exhibit A at 1-2.

    3.     In the Complaint, Plaintiff alleges that he purchased an automobile insurance policy from the Exchange that was in effect on October 13, 2020, when he was in an accident with an at-fault, underinsured driver.  Compl. ¶¶ 7-10, 32-36.

    4.     Plaintiff alleges that his policy carried minimum-limits uninsured and underinsured motorist ("UM/UIM") coverage in the amount of $25,000 per person and $50,000 per occurrence at the time of the accident.  Compl. ¶¶ 10, 36.  He also alleges that the tortfeasor carried the minimum required liability insurance with limits of $25,000 per person, $50,000 per occurrence.  Compl. ¶38.

    5.     According to Plaintiff, the Exchange's policy forms failed to fully inform him of the New Mexico "offset" for underinsured motorist coverage described in *Schmick v. State Farm Mutual Insurance Company*, 704 P.2d 1092 (1985).[1]  Compl. ¶ 27.  *Schmick* directs that: "under a statute like ours, where the most an insured can receive is the amount of underinsurance purchased for his benefit, that amount must be offset by available liability proceeds." *Schmick,* 704 P.2d at 1100 ("[T]he maximum recovery is always offset by the tortfeasor's liability insurance coverage"). Plaintiff thus alleges that the Exchange "misrepresented the true value of the illusory underinsured motorist coverage" that it sold to Plaintiff "and for which Defendant collected premiums."  Compl. ¶ 31.

---

[1] The Exchange uses the term "offset" in quotes because it is actually a misnomer.  The *Schmick* test is used to determine the amount of UIM benefits available under the combined UM/UIM coverage, not to actually "offset" any UIM benefits.  In other words, the amount described as an "offset" is not the UIM aspect of UM/UIM coverage at all, so there is no UIM coverage being offset.

6.     Plaintiff's causes of action arise from the fact that the *Schmick* "offset" of the at-fault drivers' $25,000 per person/$50,000 per accident liability coverage resulted in the Exchange denying Plaintiff's claim for UIM coverage. *See* Compl. ¶¶ 41-44.  According to Plaintiff, "it was reasonably foreseeable that the underinsured coverage sold" by the Exchange was "illusory and/or misleading."  Compl. ¶¶ 67-68.

7.     Plaintiff also asserts that, because of the "offset," the Exchange "materially misrepresented the terms and benefits of underinsured coverage, yet charged a premium for such illusory and/or misleading coverage."  Compl. ¶ 67; *see also id.* at ¶ 69 ("A reasonably prudent insurer would not charge a premium for coverage it intended to deny or did not provide.")

8.     Based on the foregoing allegations, Plaintiff asserts causes of action for: Negligence (Claim 1); Violations of the New Mexico Unfair Trade Practices Act (Claim 2); Violations of the New Mexico Unfair Insurance Practices Act (Claim 3); Reformation of Insurance Policy (Claim 4); Breach of the Covenant of Good Faith and Fair Dealing (Claim 5); Negligent Misrepresentation (Claim 6); Unjust Enrichment (Claim 7); Declaratory Relief (Claim 8); and Injunctive Relief.

9.     Plaintiff seeks to recover from the Exchange alleged compensatory damages, treble damages, punitive damages, attorneys' fees, declaratory relief, and injunctive relief. Compl. ¶ 58, 62, 71, 94, 108 & REQUEST FOR RELIEF.

10.     Plaintiff seeks to represent the following putative class:

> All persons (and their heirs, executors, administrators, successors, and assigns), from whom Defendant collected a premium for an underinsured motorist coverage on a policy that was issued or renewed in New Mexico by Defendant and that purported to provide underinsured motorist coverage on the face of its application and declaration pages, but which effectively provided no underinsured motorists coverage and/or misleading underinsured coverage, reflected on Defendant's declaration page, because of the statutory offset recognized in *Schmick v. State Farm Mutual*

*Automobile Insurance Company*, 704 P.2d 1092 (1985).

Compl. ¶ 45.

11.    Plaintiff also seeks to represent the following putative subclass:

> All Class Members (and their heirs, executors, administrators, successors, and assigns) where an underinsured motorist coverage on a policy that was issued or renewed in New Mexico by Defendant and that purported to provide the underinsured motorist coverage on the face of its application and declaration pages, but which in fact provides no underinsured motorists coverage and/or misleading underinsured coverage because of the statutory offset recognized in *Schmick v. State Farm Mutual Automobile Insurance Company*, 704 P.2d 1092 (1985), and who sustained damages in excess of an insured tortfeasor's policy limits, received the extent of all bodily injury liability limits available but were denied underinsured motorist coverage benefits, in whole or in part, by Defendant.

Compl. ¶ 46.

## II.    THE EXCHANGE SATISFIED THE PROCEDURAL REQUISITES FOR REMOVAL

12.    The Exchange's removal to this Court is timely.  The Complaint was delivered to the New Mexico Department of Insurance on May 6, 2022, and then served on the Exchange's service of process agent on May 13, 2022.  *See* Exhibit A at 1-2.

13.    Service of process was thus completed on May 13, 2022.  *See* N.M.S.A. § 59A-5-32(B); *see also Crespin v. Bainbridge*, No. 13-cv-739, 2014 WL 12704686, at *2 (D.N.M. Mar. 4, 2014) ("[A] defendant's time for removal does not begin to run until service upon that defendant is complete.")

14.    Thirty days after May 13, 2022, is Sunday, June 12, 2022.  Thus, under Fed. R. Civ. P. 6(a) the deadline to remove is Monday, June 13, 2022 – "the next day that is not a Saturday, Sunday, or legal holiday."  Fed. R. Civ. P. 6(a); *see also Hernandez v. Menlo Logistics, Inc.*, No. 12-cv-0907, 2013 WL 5934411, at *1 (D.N.M. Sept. 30, 2013) ("[T]he removal statute is subject to rule 6(a)'s computation procedure.  Thus, although the thirty-day deadline for removal set forth

in § 1446(b) fell on Sunday, August 26, 2012, that deadline was computed to fall on Monday, August 27, 2012, by virtue of rule 6(a).").

15.    This Notice of Removal is filed on Monday, June 13, 2022.  It is thus timely.

16.    Venue is proper in this Court because the Second Judicial District Court of the County of Bernalillo, New Mexico, is located in the District of New Mexico.  *See* 28 U.S.C. § 1441(a) (a state-filed civil action subject to federal jurisdiction may be removed "to the district court . . . for the district and division embracing the place where such action is pending").

17.    As required under 28 U.S.C. § 1446(a) and Local Rule 81.1(a), the Exchange has attached copies of all records and proceedings from the state court action.  *See* Exhibit A (service papers and Complaint); Exhibit B (docket).

18.    As required under 28 U.S.C. § 1446(d), a copy of this Notice of Removal is being served upon Plaintiff's counsel, and a copy is being filed with the Clerk of the Second Judicial District Court of the County of Bernalillo, New Mexico.

## III.    REQUIREMENTS FOR REMOVAL UNDER THE CLASS ACTION FAIRNESS ACT ARE SATISFIED

19.    Under CAFA, this Court has original jurisdiction over any asserted class action[2] that: (1) includes at least one class member whose citizenship is diverse from that of the defendant; (2) involves an aggregate amount in controversy of $5 million or more, exclusive of interest and costs; and (3) has at least 100 putative class members.  *See* 28 U.S.C. § 1332(d), as

---

[2] CAFA defines a "class action" as "any civil action filed under Rule 23 of the Federal Rules of Civil Procedure or similar State statute or rule of judicial procedure authorizing an action to be brought by 1 or more representative persons as a class action."  28 U.S.C. § 1332(d)(1)(B). Plaintiff titles their Complaint a "Class Action Complaint" and seek certification of a class (and subclass) of New Mexico insureds pursuant to New Mexico's similar class action rule.  Compl. ¶¶ 45-63.

amended by The Class Action Fairness Act of 2005, Pub. L. No. 109-2, 119 Stat. 4. Each requirement is satisfied here.

**A.      Minimal diversity exists.**

20.    CAFA's minimal diversity requirement is satisfied.

21.    The Exchange is an interinsurance exchange and an unincorporated association with members in multiple states. Exhibit C ¶ 4.

22.    For purposes of jurisdiction under CAFA, "an unincorporated association shall be deemed to be a citizen of the State where it has its principal place of business and the State under whose laws it is organized." 28 U.S.C.A. § 1332(d)(10); *see also Siloam Springs Hotel, L.L.C. v. Century Sur. Co.*, 781 F.3d 1233, 1237 n.1 (10th Cir. 2015).

23.    As an interinsurance exchange, the Exchange is an "unincorporated association" under 28 U.S.C.A. § 1332(d)(10). *See Miller v. Farmers Ins. Grp.*, No. CIV-10-466-F, 2010 WL 11451123, at *1 (W.D. Okla. July 26, 2010) ("The court agrees with the Fourth Circuit in *Ferrell v. Express Check Advance of SC LLC*, 591 F.3d 698, 703-05 (4th Cir. 2010) that as a matter of statutory interpretation, reciprocal or inter-insurance exchanges are 'unincorporated associations,' as used in 28 U.S.C. § 1332(d)(10)."); *Safranek v. USAA Cas. Ins. Co.*, 525 F. Supp. 3d 707, 727 (M.D. La. 2021) ("Reciprocal inter-insurance exchanges . . . have been held in several cases to be unincorporated associations. As such, USAA's citizenship is determined by 28 U.S.C. § 1332(d)(10)"); *Coleman v. Chase Home Fin., LLC*, No. CIV.08-2215NLHJS, 2009 WL 1323598, at *2 (D.N.J. May 11, 2009) (quoting the Report of the Senate Judiciary Committee on CAFA: "Some insurance companies, for example, are 'inter-insurance exchanges' or 'reciprocal insurance associations.' For that reason, federal courts have treated them as unincorporated associations for diversity jurisdiction purposes. . . . It makes no sense to treat an unincorporated insurance company

differently from, say, an incorporated manufacturer for purposes of diversity jurisdiction. New subsection 1332(d)(10) corrects this anomaly.").

24.    The Exchange has its principal place of business in California and is organized under the laws of California.  *See* Exhibit C ¶ 5.  Under  28 U.S.C. § 1332(d)(10), it is therefore a citizen of California.

25.    Plaintiff alleges that he is a citizen of New Mexico.  Compl. ¶ 5.

26.    Because Plaintiff is a citizen of a state other than California, the minimal diversity requirement of 28 U.S.C. § 1332(d)(2)(A) is satisfied.

**B.    The class claims place more than $5 million in controversy.**

27.    CAFA provides this court with original jurisdiction over class actions "in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs." *See* 28 U.S.C. § 1332(d)(2)

28.    Because "no antiremoval presumption attends cases invoking CAFA, which Congress enacted to facilitate adjudication of certain class actions in federal court . . . a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014).  "Evidence establishing the amount is required by § 1446(c)(2)(B) only when the plaintiff contests, or the court questions, the defendant's allegation." *Id.*

29.    The amount in controversy is "not proof of the amount the plaintiff will recover. Rather, it is an estimate of the amount that will be put at issue in the course of the litigation." *McPhail v. Deere & Co.*, 529 F.3d 947, 956 (10th Cir. 2008). "[T]he question at this stage in the proceedings isn't what damages the plaintiff will *likely* prove but what a factfinder *might* conceivably lawfully award . . . . At the end of the day, even if it is highly improbable that the

Plaintiff will recover the amounts Defendants have put into controversy, this does not meet the legally impossible standard." *Hammond v. Stamps.com, Inc.*, 844 F.3d 909, 912 (2016) (quotations and alterations omitted). *See also Valdez v. Metro. Prop. & Cas. Ins. Co.*, 867 F. Supp. 2d 1143, 1163-64 (D.N.M. 2012) ("The amount-in-controversy requirement is an estimate of the amount that will be put at issue in the course of the litigation.") (citation and internal quotation omitted).

       1.  <u>Compensatory damages</u>.

    30.  Plaintiff alleges that the Exchange improperly "denied Mr. Smith's underinsured motorist coverage claim for the full amount of UIM coverage." Compl. ¶ 42.

    31.  Plaintiff therefore alleges that the Exchange "failed to deliver the quality or quantity of services applied for and purchased and paid for by Mr. Smith and other insureds" – namely, the $25,000 that the Exchange allegedly "offset" when it calculated each insured's payment. Compl. ¶ 74; *see also* Compl. ¶ 116 (alleging that Plaintiff and class members "do not know and do not understand that if they purchase underinsured motorist coverage, they will not receive any underinsured motorist coverage at all when damages in excess of the tortfeasor's liability coverage are incurred, losing the full benefit of their above-minimal limits coverage displayed on the face of their declaration pages because of the *Schmick* offset.")

    32.  According to Plaintiff, the Exchange "misrepresented the true value of the illusory underinsured motorist coverage" that it sold to Plaintiff "and for which Defendant collected premiums." Compl.¶ 31.

    33.  Among other relief, Plaintiff thus demands: "The Court should reform the ambiguous insurance contracts respectively entered between Defendant and Mr. Smith and Class Members, to conform to the intentions and reasonable beliefs and expectations of Mr. Smith and Class

Members that they would receive the underinsured motorist coverage that they contracted for and for which Defendant collected premiums." Compl. ¶ 101.

34.    Plaintiff also seeks relief dating back to "the issuance of the New Mexico Supreme Court's opinion of *Schmick* on August 14, 1985." Compl. ¶ 67; *see also id.* at ¶¶ 45-46, 111-113, 120.

35.    And, because Plaintiff purports to bring this case as a class action, he believes that his claims are "typical of the claims of members of the Class and Subclass." Compl. ¶ 49; *see also In re Blackbaud, Inc.*, No. 20-mn-02972, 2021 WL 1940581, at *5 (D.S.C. May 14, 2021) (extrapolating the plaintiff's estimated damages to each member of the class because the plaintiff "asserted that his claims were 'typical' of the entire class").

36.    In *Palmer v. State Farm Mut. Auto. Ins. Co.*, the plaintiffs (represented by the same counsel) brought similar claims asserting "that underinsured motorist coverage provided by Defendants is illusory or misleading, as the insured will receive either no coverage or substantially reduced coverage once the statutory offset above is applied." *Palmer v. State Farm Mut. Auto. Ins. Co.*, No. 19-cv-00301, 2019 WL 2647984, at *1 (D.N.M. June 27, 2019). The class definitions in *Palmer* and this case are almost identical:

| *Smith v. Exchange Class Definition* | *Palmer v. State Farm Class Definition* |
|---|---|
| All persons (and their heirs, executors, administrators, successors, and assigns), from whom Defendant collected a premium for an underinsured motorist coverage on a policy that was issued or renewed in New Mexico by Defendant and that purported to provide underinsured motorist coverage on the face of its application and declaration pages, but which effectively provided no underinsured motorists coverage and/or misleading underinsured coverage, reflected on Defendant's declaration page, because of the | All persons (and their heirs, executors, administrators, successors, and assigns) from whom State Farm collected a premium for underinsured motorist coverage on a policy that was issued or renewed in New Mexico by State Farm and that purported to provide underinsured motorist coverage, but which effectively provides no underinsured motorist coverage ("UIM") and/or misleading UIM coverage, because of the statutory offset recognized in *Schmick v. State Farm Mutual* |

| | |
|---|---|
| statutory offset recognized in *Schmick v. State Farm Mutual Automobile Insurance Company*, 704 P.2d 1092 (1985).<br><br>Compl. ¶ 45 | *Automobile Insurance Company,* 704 P.2d 1092 (1985)<br><br><br>*Palmer*, 2019 WL 26984 at *1. |

37.    *Palmer* recognized that because the plaintiffs sought "reformation of the polices for everyone who received underinsured motorist coverage" (as does the Plaintiff here), the amount in controversy could be measured as the "benefit received by each insured, or the cost incurred by the Defendants, for an increase in coverage limits of $25,000" for each of the policies issued by the insurer.  *Id.*

38.    Applying the same calculus from *Palmer* shows that the amount in controversy "is undoubtedly more than $5,000,000."  *Id.*

39.    From 2017 to May 2022, the Exchange sold about 46,893 automobile insurance policies in New Mexico that included UM/UIM coverage.  Exhibit D ¶ 7.

40.    Multiplying the number of policies by the $25,000 increase in coverage limits demanded by Plaintiff for each policyholder results in an amount in controversy of $1,172,325,000.  This exceeds the $5,000,000 jurisdictional threshold.

41.    *Palmer* also recognized that it would reach the same result if damages were limited to insureds who were involved in automobile accidents and entitled to receive additional payments from the reformed contracts.

42.    *Palmer* did not cite specific statistics for the number of such claims, but recognized that "if a mere 200 class members were in accidents and entitled to receive the additional payments under the reformed underinsured motorist coverage ($25,000 per policy), the amount in

controversy would be satisfied." *Id.*; *see also Stanforth v. Farmers Ins. Co. of Arizona*, No. 09-cv-1146, 2010 WL 11437167, *3 (D.N.M. Apr. 22, 2010) (calculating the amount in controversy for claims alleging that defendants wrongfully induced insured to reject stacked UIM coverage by estimating the average additional amount insureds would have received if they had the disputed piece of coverage)

43.    Notably, Plaintiff does not limit her class definition to insureds like Plaintiff who allegedly received *no* UM/UIM compensation.  Plaintiff's proposed subclass includes insureds who received "no underinsured motorist coverage ***and/or*** misleading underinsured coverage because of the statutory offset recognized in *Schmick v. State Farm Mutual Automobile Insurance Company*, 704 P.2d 1092 (1985), and who sustained damages in excess of an insured tortfeasor's policy limits, received the extent of all bodily injury liability limits available but were denied underinsured motorist coverage benefits, ***in whole or in part***, by Defendant."  Compl. ¶ 26.  In other words, Plaintiffs may try to seek compensation for insureds who received some UIM indemnification (for example, because they chose to purchase greater than minimum-limits coverage), but had that indemnification reduced by the "statutory offset" required by *Schmick*.  *See id.*

44.    Further, not even 200 class members must be counted to pass the $5,000,000 jurisdictional threshold.  *Palmer*'s 200 class member estimate was based *only* on compensatory damages of $25,000 per policy.  But as explained below, Plaintiff here also seeks treble damages, punitive damages, and attorneys' fees.  *See Barreras v. Travelers Home & Marine Ins. Co.*, No. 12-cv-0354, 2012 WL 12870348, *3 (D.N.M. Oct. 17, 2012) ("Even assuming that the coverage increase is only $25,000 per policy for a total of at least $2,500,000, aggregating that amount with

the potential punitive damages award and attorneys' fees would satisfy the amount in controversy requirement.").

45.    Given that the Exchange sold 46,893 policies with UM/UIM coverage from just 2017 to May 2022, and that Plaintiff seeks damages dating back well beyond 2017, it is reasonable to conclude that at least 200 UM/UIM claims were denied or reduced based on the insured's recovery from the tortfeasor's liability insurer since the Exchange began selling automobile insurance in New Mexico, in 1998.

46.    Finally, *Palmer* also recognized that the amount in controversy might be satisfied by premium payments from the class.  *Id.* at *3.

47.    Plaintiff's primary class definition includes any insured "from whom Defendant collected a premium for underinsured motorist coverage" in New Mexico and is not limited to those who submitted claims.  Compl. ¶ 45.

48.    From 2017 to May 2022, the Exchange wrote $27,290,738 in UM/UIM premium. Exhibit D ¶ 5.  And in New Mexico, insureds pay a single premium for combined UM/UIM coverage.  Exhibit D ¶ 8; *see also* Compl. Ex. 1 at Smith0003 (Renewal Declarations Page showing a single premium for "Bodily Injury Uninsured & Underinsured Vehicles.").

49.    This amount of premium from 2017 to May 2022 satisfies the $5,000,000 amount in controversy by itself.

50.    But again, Plaintiff's demands a premium refund dating back all the way to 1985, when *Schmick* was first decided.  For the Exchange, that means Plaintiff demands damages dating back to 1998, when the Exchange first started selling automobile insurance in New Mexico.

51.    $27,290,738 in UM/UIM premium over a 5.5 year period (2017 to May 2022) averages to $4,961,952 in UM/UIM premium a year.  Over the 24 years the Exchange has been

writing automobile insurance in New Mexico, that amounts to an estimated $119,086,848 in premium that Plaintiff demands to be refunded to the class.  ($4,961,952 estimated yearly premium x 24 years of premium payments = $119,086,848.)  Again, this is well over the jurisdictional amount in controversy.

52.    And, again, the premium refund presents only a limited picture of the damages Plaintiff seeks.  Plaintiff's allegations of underpayment relating to the individual named Plaintiff (*see* Compl. ¶  42-44), as well as the subclass of insureds "who sustained damages in excess of an insured tortfeasor's policy limits, received the extent of all bodily injury liability limits available and would be or were denied underinsured motorist coverage benefits, in whole or in part, by Defendant" (Compl. ¶ 46) shows that Plaintiff will seek greater damages for the subset of insureds whose claims were denied or reduced by the Exchange's alleged application of the "*Schmick* offset."

2.    Treble damages.

53.    Plaintiff also claims entitlement to treble damages that are available under the New Mexico Unfair Trade Practices Act ("UPA").  Compl. REQUEST FOR RELIEF iv; *see also* N.M.S.A. § 57-12-10(B); *Hale v. Basin Motor Co.*, 795 P.2d 1006, 1011 (N.M. 1990).

54.    The Court may consider treble damages in calculating the requisite jurisdictional amount.  *See Woodmen of World Life Ins. Soc'y v. Manganaro*, 342 F. 3d 1213, 1218 (10th Cir. 2003).  The defendant does not have to prove that the plaintiff is more likely than not to ultimately recover such damages, "but merely that: (1) state law permits a punitive damages award for the claims in question; and (2) the total award, including compensatory and punitive damages, could exceed $5,000,000."  *Frederick v. Hartford Underwriters Ins. Co.*, 683 F.3d 1242, 1248 (10th Cir. 2012) (citation omitted).

55. The Exchange disputes that Plaintiff is entitled to or will recover such damages. But viewing Plaintiff's Complaint as pled, which is the standard for removal analysis, treble damages should be included for purposes of determining the amount in controversy because they are possible to recover under the state law claims pled. *See* N.M.S.A. § 57-12-10(B).

56. Trebling the amount of UM/UIM premium written between 2017 and May 2022 results in an amount in controversy well above the $5 million minimum: $81,872,214. ($27,290,738 x 3 = $81,872,214.) And again, Plaintiff seeks damages dating back much earlier than 2017 as well as additional damages from recalculated claims.

### 3. **Punitive damages.**

57. Plaintiff also pleads entitlement to punitive damages. Compl. ¶ 58, 62, 71, 108, REQUEST FOR RELIEF V. Punitive damages may also be considered in determining the requisite jurisdictional amount. *See Woodmen of World Life*, 342 F. 3d at 1218. "If the party's combined award of compensatory and punitive damages is greater than the trebled damages under the UPA, the party has the option of taking the greater punitive damages award." *Id*; *see also Safier v. State Farm Fire & Cas. Co.*, No. CV 09-801 JCH/ACT, 2010 WL 11493790, at *6 (D.N.M. Jan. 15, 2010) (considering punitive damages when calculating jurisdictional amount in controversy under CAFA)

58. A "4 to 1 punitive-damages-to-alleged-compensatory-damages ratio" is permissible under New Mexico law and appropriate for estimating the impact of punitive damages for the jurisdictional amount in controversy.[3] *White v. Lawrence*, No. 14-CV-429 MCA/KK, 2015 WL

---

[3] "To measure the amount in controversy based on claims for unspecified sums of attorney fees, punitive damages, and emotional / pain-and-suffering damages, courts permit removing parties to rely, for estimation purposes, on reasonable multipliers / percentages." *Hacker v. Aetna Life Ins. Co.*, No. 18-cv-334, 2019 WL 638369, at *2 (E.D. Ky. Feb. 13, 2019); *see also Walker v. Old Reliable Cas. Co.*, No. 13-cv-04122, 2014 WL 6872903, at *3 (W.D. Ark. Dec. 4, 2014) ("Courts have found punitive damage multipliers of up to six to be acceptable when considering

13651167, at *4 (D.N.M. Sept. 11, 2015); *see also Safier*, 2010 WL 11493790, at *6 ("New Mexico courts have upheld punitive damage awards as great as 18 times higher than compensatory damages.").

59.    Applying the "4 to 1" ratio to the amount of UM/UIM premium written between 2017 and May 2022 results in a total amount in controversy well above the $5 million jurisdictional minimum: $136,453,690.  ($27,290,738 x $5^4$ = $136,453,690.)

    4.    Attorneys' fees.

60.    Plaintiff also pleads that "Mr. Smith and Class Members are entitled to attorney's fees and costs," which are available to successful plaintiffs under the New Mexico Unfair Insurance Practices Act or Unfair Trade Practices Act.  Compl ¶ 94, REQUEST FOR RELIEF iii, viii; *see also* N.M.S.A. § 57-12-10(C); N.M.S.A. § 39-2-1; N.M.S.A. § 59A-16-30.

61.    Attorneys' fees, where permitted by statute, may also be considered as part of the amount in controversy for purposes of establishing federal jurisdiction.  *See, e.g., Martinez-Wechsler v. Safeco Ins. Co. of Am.*, No. 12-cv-0738, 2012 WL 12892762, *2 (D.N.M. Sept. 13, 2012); *Woodmen of World Life*, 342 F.3d at 1218 ("Because the UPA requires the award of attorneys' fees to a prevailing claimant, the potential award of attorneys' fees, in addition to compensatory and treble damages, should have been considered in determining whether Woodmen satisfied the jurisdictional amount."); *Barreras v. Travelers Home & Marine Ins. Co.*, No. 12-cv-

---

the availability of punitive damages in the CAFA amount-in-controversy context"); *Corey v. Builders Mut. Ins. Co.* No. 10-cv-00408, 2010 WL 11643184, at *4 (D.S.C. May 7, 2010) (finding the jurisdictional amount in controversy satisfied by applying a 9:1 punitive damages multiplier); *Blaylock v. Mutual of N.Y. Life Ins. Co.,* 228 F.Supp.2d 778, 786 n. 5 (S.D.Miss.2002) ("[T]he Fifth Circuit recently described as 'very conservative' a district court's application of a 6:1 ratio of punitive damages to compensatory damages in calculating an amount in controversy....").

[4] The multiplier is 5 because, under a 4:1 ratio of punitive damages to compensatory damages, the total damages would be the original compensatory damages *plus* punitive damages of 4 times compensatory damages.

0354, 2012 WL 12870348, *3 (D.N.M. Oct. 17, 2012) ("Where a statute allows for the recovery of attorneys' fees, fees may be used in calculating the jurisdictional amount. . . . Here, UPA and other statutes under which Plaintiff asserts claims allow for the recovery of fees. *See* N.M. Stat. Ann. §§ 39-2-1, 57-12-10(C). Accordingly, that amount, too, could count toward satisfying the jurisdictional minimum.").

62.    In class action cases, courts in the Tenth Circuit have applied 20%-40% of the class recovery benchmark for attorneys' fees. *See, e.g.*, *In re Horizon/CMS Healthcare Corp. Sec. Litig.*, 3 F. Supp. 2d 1208, 1212 (D.N.M. 1998) ("[T]his Court set attorneys' fees at 20% of the net recovery after expenses"); *In re Thornburg Mortg., Inc. Sec. Litig.*, 912 F. Supp. 2d 1178, 1249-57 (D.N.M. 2012) (setting attorney fees at "twenty-percent of the Settlement Fund—$400,000.00 in fees," but noting "[t]wenty-percent in fees is below the average percentage of the class fund that courts award" and "[f]ees in the range of 30–40% of any amount recovered are common in complex and other cases taken on a contingency fee basis") (citation and internal quotation omitted); *Robles v. Brake Masters Sys., Inc.*, No. 10-cv-0135, 2011 WL 9717448, *19 (D.N.M. Jan. 31, 2011) (setting fee at 18.77% of the class recovery, but stating the "percentage is less than half Robles' counsels' contingency fee, which would have been at least 40%," and noting courts within the Tenth Circuit have approved attorneys' fees ranging from 25% to 40%).

63.    Each of the calculations above show that Plaintiff's amount in controversy is well over $5 million, before accounting for attorneys' fees. So, adding an additional 20-40% of fees on top would only further surpass the jurisdictional amount.

64.    The Exchange disputes that such fees, or any other alleged damages, costs, or relief, for that matter, would be justified or will actually be recovered, but they are properly considered for purposes of the amount in controversy analysis.

5.    Cost of injunctive and declaratory relief.

65.    Based on Plaintiff's Complaint, the amount in controversy is well over $5 million when considering only compensatory damages, treble or punitive damages, and attorneys' fees. But the Court should also consider the cost of the injunctive relief in this case to the Exchange in analyzing the amount in controversy. "In actions seeking declaratory or injunctive relief, it is well established that the amount in controversy is measured by the value of the object of the litigation." *Valdez*, 867 F. Supp. 2d at 1178. In measuring the value of the object of the litigation, the Tenth Circuit follows the "either viewpoint rule," which considers the "value to the plaintiff or the cost to the defendant." *Lovell v. State Farm Mut. Auto Ins. Co.*, 466 F. 3d 893, 897 (10th Cir. 2006). *See also Frederick*, 683 F.3d at 1247 (noting jurisdictional amount may include "how much it would cost to satisfy the plaintiff's demands").

66.    In this case, the result of any judgment for the Plaintiff would be that the Exchange's alleged practice of applying New Mexico's "offset" laws in connection with claims for minimum limits UM/UIM coverage would be ruled unlawful. The Exchange therefore would, among other things, have to pay these types of claims without applying the "offset."

67.    In *Keeling v. Esurance Ins. Co.*, 660 F.3d 273 (7th Cir. 2011), the plaintiff alleged the insurer committed fraud by charging for UIM coverage that was worthless in light of the automobile insurance policy's restrictions. The Seventh Circuit held that the value of the injunctive relief was based on the loss of premiums or increase in claims payments the insurer could incur if the plaintiff prevailed. *Id.* at 274.

68.    In *Valdez,* the court quoted *Keeling* with approval for the principle that "the cost of prospective relief cannot be ignored in the calculation of the amount in controversy," that where an insurer-defendant would either have to "stop charging a premium or change the terms so that

policyholders receive indemnity more frequently, it will suffer a financial loss," and that $1,500,000.00 in future lost premiums was part of the amount in controversy. 867 F. Supp. 2d at 1165; *see also Cox v. Allstate Ins. Co.*, No. 07-cv-1449, 2008 WL 2167027, *3 (W.D. Okla. May 22, 2008) (denying motion to remand; finding insurer met CAFA's amount in controversy requirement by presenting evidence that premium payments received in 2006 alone far exceeded $5,000,000 where relief sought was the equitable remedy of disgorgement of benefits insurer received for the allegedly improper conduct); *Armur v. Transamerica Life Ins. Co.*, No. 10-2136-EFM, 2010 WL 4180459, *4 (D. Kan. Oct. 20, 2010) (denying motion to remand in dispute over premium rate increases; finding insurer met CAFA's amount in controversy requirement by multiplying anticipated annual premium rate increases by total number of policies).

69.    In this case, compliance with a judgment in Plaintiff's favor could require the Exchange to reimburse future insureds an extra $25,000 for their UM/UIM claims where an "offset" would otherwise be taken.  Only 200 future claims must be adjudicated under this framework to meet the jurisdictional amount in controversy.

70.    The minimum jurisdictional amount requirement of $5,000,000 is easily satisfied.

**C.    There are at least 100 proposed class members.**

71.    28 U.S.C. § 1332(d)(5) requires at least 100 proposed class members.

72.    Plaintiff's class definition includes all insureds "from whom Defendant collected a premium for an underinsured motorist coverage on a policy that was issued or renewed in New Mexico."

73.    Plaintiff himself alleges that this includes "thousands of New Mexican insureds." Compl. ¶ 120.

74.    From 2017 to May 2022, the Exchange sold 46,893 automobile insurance policies in New Mexico that included UM/UIM coverage.  Exhibit D ¶ 7.  This number does not account for insureds who were sold policies before 2017, who are also included in Plaintiff's class definition.

75.    This conservative estimate satisfies 28 U.S.C. § 1332(d)(5).

**D.    The exceptions under CAFA do not apply.**

76.    The exceptions under CAFA do not apply here because the Exchange is a California citizen, not a New Mexico citizen.  *See* 28 U.S.C. § 1332(d)(4)(A)(i)(II) (local controversy exception requires at least one defendant to be a citizen of the State in which the action was filed); § 1332(d)(4)(B) (home state controversy exception has the same requirement); 28 U.S.C. § 1332(d)(3) (discretionary exception also requires primary defendants to be citizens of the State in which the action was filed).

**V.    RESERVATION OF RIGHTS**

77.    The Exchange intends no admission of fact, allegation, claim, liability or wrongdoing by this Notice of Removal, and the Exchange expressly reserves all defenses, motions, and pleas including, without limitation, objections to the sufficiency of Plaintiff's pleadings and the propriety of class certification.

78.    The Exchange further reserves the right to submit additional evidence in support of the Notice of Removal, including as may be necessary to address and refute any contentions set forth in a motion to remand.

**WHEREFORE**, the Exchange respectfully requests that this Court assume full jurisdiction over this action.

Respectfully submitted,

*/s/*Meena H. Allen
MEENA H. ALLEN
ALLEN LAW FIRM, LLC
6121 Indian School Road NE, Suite 230
Albuquerque, NM 87110
(505) 298-9400

Michael E. Mumford (D.N.M. Bar No. 18-95)
Baker & Hostetler LLP
Key Tower
127 Public Square, Suite 2000
Cleveland, OH  44114
Telephone:  (216) 621-0200
Facsimile:  (216) 696-0740

Rodger L. Eckelberry
Kevin P. Zimmerman
Baker & Hostetler LLP
200 South Civic Center Drive, Suite 1200
Columbus, Ohio 43215
Telephone:      614-228-1541
Facsimile:      614-462-2616
Email:   reckelberry@bakerlaw.com
              kzimmerman@bakerlaw.com

***Applications for admissions forthcoming***

***Attorneys for Interinsurance Exchange of the Automobile Club***

## <u>CERTIFICATE OF SERVICE</u>

   I hereby certify that on this 13 day of June, 2022, I filed the foregoing electronically through the CM/ECF system, and emailed a service copy to the following counsel of record:

Kedar Bhasker
1400 Central Ave. SW, Suite 2000
Albuquerque, NM 87106

Corbin Hildebrandt
1400 Central Ave., SE, Suite 2000
Albuquerque, NM 87106

Geoffrey Romero
4801 All Saints Road, NW
Albuquerque, NM 87120


*/s/ Meena H. Allen*
Meena H. Allen